UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE LINCOLN NATIONAL LIFE INSURANCE
COMPANY, an Indiana Corporation,

    Plaintiff,

vs.

HARLEY WESTFALL and THERESA
WESTFALL, Individually, and MARY
DILWORTH, as Trustee of THE
IRREVOCABLE TRUST AGREEMENT
OF HARLEY WESTFALL AND THERESA
KAY WESTFALL,

    Defendants.

_____/

## COMPLAINT

Plaintiff The Lincoln National Life Insurance Company ("Lincoln"), by and through its attorneys, Saretsky Hart Michaels + Gould PC, states as follows for its Complaint against Defendants Harley Westfall and Theresa Westfall, individually, and Mary Dilworth, as Trustee of the Irrevocable Trust Agreement of Harley Westfall and Theresa Kay Westfall:

### The Parties

1. Lincoln is an insurance company duly organized under the laws of Indiana and with its principal place of business in Radnor, Pennsylvania. Lincoln is authorized to conduct business in the State of Michigan.

1

2. Defendants Harley Westfall and Theresa Westfall reside at 6747 Spanish Bay Drive, Windsor, Colorado and are citizens of the State of Colorado.

3. The Irrevocable Trust Agreement of Harley Westfall and Theresa Kay Westfall ("the Trust") is a trust created under the laws of the State of Michigan with a principal place of business at 906 James Street, Adrian, Michigan 49221. Defendant Mary Dilworth is the Trustee of the Trust and, upon information and belief, is a citizen of the State of Michigan and a resident of Lenawee County.

## Jurisdiction and Venue

4. Lincoln brings this action under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

5. Venue is proper for this action pursuant to 28 U.S.C. § 1391 because Ms. Dilworth is located in this District, a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District and the subject life insurance policy was issued in the District.

## Factual Background

6. On January 28, 2019, Lincoln issued a life insurance policy with a $10 million death benefit to the Trust. Mr. and Mrs. Westfall are the policy's insureds, and the Trust is the policy's beneficiary and owner.

7. The policy was issued, in part, based on an application completed by Mr. Westfall on January 28, 2019 (Part I – the Application for Individual Life Insurance)("Part I") and January 16, 2019 (Part II – the Medical Supplement)("Part II").

8. Page 4 of Part I of the application reads in part:

> I HAVE READ, or have had read to me, the complete Application for Life Insurance before signing below. All statements and answers in this application are correctly recorded, and are full, complete and true to the best of my knowledge and belief. I confirm that upon receipt of the contract I will review the answers recorded on the application. I will notify the Company immediately if any information in the application is incorrect. Caution: If your answers on this application are incorrect or untrue, the Company may have the right to deny benefits or rescind coverage under the policy and any riders attached to it.

This is followed by Mr. Westfall's signature.

9. Page 2 of Part II of the application similarly provides in part:

> I have read or have had read to me the completed Medical Supplement before signing below. All statements and answers in this Supplemental are correctly recorded and are full, complete and true to the best of my knowledge and belief. I agree that this Medical Supplement constitutes a part of the application for insurance. I understand that any false statements or material misrepresentations may result in the loss of coverage under the policy.

This is followed by Mr. Westfall's signature.

10. The policy included a two year contestability clause.



3

11.     By letter dated September 22, 2020, Lincoln notified the Trust of its intent to rescind the policy and refund all premiums paid because of material misrepresentations in the application concerning Mr. Westfall's medical history at the time he signed the application.

12.     Contrary to the statements made by Mr. Westfall on the application, as of the dates Mr. Westfall signed Part I and Part II of the application in January 2019, he was aware that he had visited and sought treatment from Dr. Steven MacDonald at the Cleveland Clinic Neurological Institute on November 15, 2018 and that Dr. MacDonald recommended Mr. Westfall have follow up diagnostic testing, including but not limited to labs and an MRI.

13.     Mr. Westfall failed to disclose his treatment with Dr. MacDonald and Dr. MacDonald's recommendation for follow up testing on the application.

14.     Question 1 of Part II of the application asked Mr. Westfall to "Provide full name/address/phone number of personal physician(s) and any other physicians seen within the past 5 years." Mr. Westfall listed Dr. Douglas Webster but did not list Dr. MacDonald.

15.     Question 3 of Part II of the application asked Mr. Westfall, "In the past 5 years have you had or been advised by a licensed medical professional to have a check-up, EKG, x-ray, blood or urine test or any other diagnostic test, excluding tests for HIV (AIDS virus)?" Mr. Westfall represented "YES,"

4

referencing April 2018 lab work, but did not disclose Dr. MacDonald's recommended follow up testing, including an MRI.

16. Question 5f of Part II of the application asked Mr. Westfall, "Have you ever been diagnosed by, or been treated by a licensed medical professional for: Seizures, fainting, dizziness, epilepsy, stroke, paralysis, or other brain or neurological disorder?" Mr. Westfall represented "NO" and did not disclose his treatment by Dr. MacDonald.

17. Question 12 of Part II of the application asked Mr. Westfall, "Within the past 5 years, have you consulted, been examined or treated by any physician or practitioner for reasons not stated in this application?" Mr. Westfall represented "NO" and did not disclose his treatment by Dr. MacDonald.

18. When Mr. Westfall signed the application and gave the above answers, he was aware that he had seen and sought treatment from Dr. MacDonald and that Dr. MacDonald had recommended follow up testing, yet he failed to disclose either of these facts.

19. Lincoln issued the policy relying on the answers provided in the application signed by Mr. Westfall.

20. The information related to Mr. Westfall's treatment by Dr. MacDonald was material to Lincoln's underwriting and issuance of the policy. Had Mr. Westfall's treatment been disclosed, Lincoln would not have issued the policy on the same terms and conditions that it was approved for and issued.

21. As Lincoln issued the policy based upon the misrepresentations made by Mr. Westfall in the application, Lincoln is entitled to recission of the policy.

## **Count 1 – Declaratory Judgment that the Policy is Null, Void and Rescinded**

22. Lincoln incorporates by reference Paragraphs 1-21 above, as if fully repeated here.

23. There is an actual controversy concerning whether the policy is null, void and rescinded due to the material misrepresentations made by Mr. Westfall during the application process.

24. Accordingly, Lincoln respectfully requests the Court enter an order pursuant to 28 U.S.C. § 2201 declaring the policy null, void and rescinded based on the material misrepresentations made by Mr. Westfall related to his medical history.

WHEREFORE, Lincoln respectfully requests that this Honorable Court enter a judgment rescinding the policy and awarding Lincoln any other relief to which it is deemed entitled.

        Respectfully submitted,

        Saretsky Hart Michaels + Gould PC
        Attorneys for Plaintiff

        By: /s/ Eric A. Michaels
            Eric A. Michaels (P57114)
            Meagan A. Lamberti (P73256)
            995 South Eton
            Birmingham, Michigan 48009
            (248) 502-3300
            emichaels@saretsky.com
            mlamberti@saretsky.com

Dated:  December 22, 2020